1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE WESTERN DISTRICT OF MICHIGAN

3                      SOUTHERN DIVISION

4       UNITED STATES OF AMERICA,

5               Plaintiff,          No:  2:22cr25

6        vs.

7       SAMUEL OGOSHI,
        SAMSON OGOSHI,
8
                Defendants.
9


10      Before:

11                       THE HONORABLE RAY KENT
12                       U.S. Magistrate Judge
                         Grand Rapids, Michigan
13                       Thursday, August 17, 2023
                         Detention Hearing Proceedings
14
        APPEARANCES:
15
                    MR. MARK A. TOTTEN, U.S. ATTORNEY
16                  By:  MR. DANIEL Y. MEKARU
                    MR. DAVIN REUST
17                  330 Ionia Avenue, NW
                    P.O. Box 208
18                  Grand Rapids, MI 49501-0208
                    (616) 456-2404
19
                            On behalf of the Plaintiff;
20
                    FEDERAL PUBLIC DEFENDER
21                  By:  MR. SEAN TILTON
                    50 Louis Street, NW, Suite 300
22                  Grand Rapids, MI 49503-2633
                    (616) 742-7420
23
                            On behalf of Samuel Ogoshi.
24

25

1              Willey & Chamberlain LLP
               MS. JULIA ANNE KELLY
2              300 Ottawa Avenue, NW, Suite 810
               Grand Rapids, MI 49503
3              (616) 458-2212

4                   On behalf of Samson Ogoshi.

5    TRANSCRIBED BY:  MR. PAUL G. BRANDELL, CSR-4552, RPR, CRR

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          08/17/2024

2          3:12 p.m.

3          THE CLERK:  The United States District Court District

4    Court for the Western District of Michigan is now in session.

5    The Honorable Ray Kent, United States Magistrate Judge,

6    presiding.  Please be seated.

7          THE COURT:  This is 22cr25, United States versus

8    Samuel Ogoshi and Samson Ogoshi.  Mr. Mekaru, Mr. Reust on

9    behalf of the United States.  I notice you guys have switched

10   seats.  Does that indicate anything of significance to me?

11         MR. REUST:  I am handling this hearing, Your Honor.

12         THE COURT:  Okay.  Mr. Tilton, Ms. Kelly on behalf of

13   Defendants.  Three matters set for hearing.  The first an

14   arraignment, the second a pretrial conference, and the third a

15   bond hearing.

16         Gentlemen, ordinarily I would never refer to a party

17   by their first name, but because you are brothers and you have

18   the same last name, in order to keep the record clear I will be

19   calling you by your first names today.  All right.  When we

20   were here last time you both asked for court appointed lawyers

21   and I appointed Mr. Tilton and Ms. Kelly to represent you.

22   Have you had a chance now to meet with them and discuss the

23   case?  Samuel?

24         DEFENDANT SAMUEL OGOSHI:  Yes, sir.

25         THE COURT:  Samson?

DEFENDANT SAMSON OGOSHI:  Yes, sir.

THE COURT:  Mr. Tilton, will Samuel waive the reading of the indictment if I summarize the charges?

MR. TILTON:  Yes, Your Honor.  I have read it to him.

THE COURT:  Okay.  Ms. Kelly, will Samson?

MS. KELLY:  Yes, Your Honor.

THE COURT:  All right.  All right.  As we covered last time, Gentlemen, the government is bringing three criminal charges in common against both of you, and one additional charge against Samuel only.  The three common charges are contained in Counts 2, 3 and 4 of the indictment.  They also include Ezekiel Robert, who has not yet appeared in this matter.

In Count 2 the government charges a conspiracy to sexually exploit minors.  It alleges that some time prior to February of 2021, continuing through at least May of 2022, in Marquette County and other places, the Defendants conspired or agreed to induce minors to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. The Defendants pretended to be young women in social media accounts, and in that way lured the boys into engaging in sexually explicit conduct.  Once the boys had produced and sent images of the -- of that conduct to the Defendants, the Defendants used those images to blackmail them for money.

Gentlemen, do you understand the charge in Count 2,

1    Samuel?

2             DEFENDANT SAMUEL OGOSHI:  Yes, sir.

3             THE COURT:  Samson?

4             DEFENDANT SAMSON OGOSHI:  Yes, sir.

5             THE COURT:  Count 3 charges conspiracy to distribute

6    child pornography.  It alleges the conduct took place in that

7    same time period, same place, and in this Count the government

8    alleges that the two of you and Mr. Robert conspired to

9    distribute child pornography, in other words, conspired to or

10   threatened to distribute the sexually explicit images which you

11   deceived the victims into producing in order to blackmail them.

12            Do you understand Count 3, Samuel?

13            DEFENDANT SAMUEL OGOSHI:  Yes, sir.

14            THE COURT:  Samson?

15            DEFENDANT SAMSON OGOSHI:  Yes, sir.

16            THE COURT:  Count 4 is a conspiracy to commit stalking

17   through the Internet.  It's longer.  It's a little more

18   involved, but it relies on the same facts.  Alleges that it

19   took place during the same time period, also here in the

20   Western District of Michigan, and that as part of your overall

21   conspiracy you agreed to use the Internet basically to attempt

22   to blackmail these boys into giving you money, and you did that

23   by threatening to expose or show the boy's family, friends,

24   others, the images which you had lured them into making, which

25   would have, of course, caused any reasonable person to

1    experience emotional distress.

2            We went through the specific actions which the

3    government alleges you committed in achieving this conspiracy

4    to commit stalking.

5            Do you understand what you are charged with in Count

6    4, Samuel?

7            DEFENDANT SAMUEL OGOSHI:  Yes, sir.

8            THE COURT:  Samson?

9            DEFENDANT SAMSON OGOSHI:  Yes, sir.

10           THE COURT:  Okay.  And then Samuel, as you know, you

11   are also charged alone in Count 1 with sexual exploitation of a

12   minor resulting in death.  The government claims on March 25 of

13   2022, in Marquette County, you induced the victim in this case,

14   who was at that time a minor, using the pseudonym dani.robertts

15   pretending to be a girl.  You induced the victim to produce

16   sexually explicit images of himself, which he then sent to you.

17   After you got them you threatened to blackmail him.  He did not

18   have enough money to pay the blackmail you asked for and later

19   committed suicide.

20           Do you understand the charge in Count 1?

21           DEFENDANT SAMUEL OGOSHI:  Yes, sir.

22           THE COURT:  There are penalties which we also went

23   through last time but we'll go through again.  Counts -- I am

24   going to jump around a little bit to cover what's common

25   between various counts.  So Counts -- if you were convicted on

Counts 1, 2 or 3, you would be required to register as a sex offender.  You would be required to pay restitution, which is also required by Count 4.  So all of the Counts require restitution.  All of the Counts have special assessments, financial consequences linked to them.  Each has a special assessment of $100.  Each -- with the exception of Count 4, each has an additional assessment of $5,000.  Count 1 has a third special assessment of up to $50,000.  Count 2 a third of up to $50,000, and Count 3 a third of up to $35,000.  Each has a fine, which is a separate kind of financial consequence, of up to $250,000.

Each has a period of supervised release following any prison term.  On Count 4 that period is not more than three years.  The other three Counts all have a minimum period of supervised release of five years and a maximum period of supervised release of up to life.

And finally, each of the charges carries a prison term.  Count 1, which, of course, is directed at Samuel only, has a mandatory minimum prison term of three -- of 30 years.  Minimum term of 30 years, maximum of life in prison.  Count 2, a minimum prison term of 15 years, a maximum of 30.  Count 3, a minimum prison term of five years, a maximum of 20, and finally, Count 4 has a -- has no minimum term, a maximum of five years.

Gentlemen, do you understand the penalties?  Samuel?

1              DEFENDANT SAMUEL OGOSHI:  Yes, sir.

2              THE COURT:  Samson?

3              DEFENDANT SAMSON OGOSHI:  Yes, sir.

4              THE COURT:  You have important constitutional rights

5      in this case.  When we were here last I talked to you about a

6      couple of them.  Your right to remain silent, your right to a

7      lawyer, which you both have.

8              You have other equally important rights, including the

9      right to be presumed innocent, the right to have the government

10     prove you guilty beyond a reasonable doubt on each and every

11     element of these charges.  That would occur at a speedy and

12     public trial before 12 jurors drawn from the community.  At

13     trial you would have the right, through your lawyers, to

14     confront and cross examine the government's witnesses, to call

15     your own witnesses and have the Court order them to appear and

16     testify.  You would have the right to present other evidence

17     which you believed demonstrates you are not guilty of these

18     charges.  And finally, you would have the right to either take

19     the witness stand and testify in your own defense or remain

20     silent and not have your silence used against you in any way.

21             We are going to project up on the screen now a form

22     which summarizes your constitutional rights.  We have one for

23     each of you.  This one looks like it's for you, Samuel.  Is

24     that your signature near the bottom of the form?

25             DEFENDANT SAMUEL OGOSHI:  Yes, sir.

1          THE COURT:  Did you read and understand the form

2     before you signed it?

3          DEFENDANT SAMUEL OGOSHI:  Yes, sir.

4          THE COURT:  Do you understand the rights you have in

5     this case?

6          DEFENDANT SAMUEL OGOSHI:  Yes, sir.

7          THE COURT:  All right.  Samson, we are going to put

8     your form up now.  Is that your signature at the bottom of your

9     form?

10          DEFENDANT SAMSON OGOSHI:  Yes, sir.

11          THE COURT:  Did you also read and understand the form

12     before you signed it?

13          DEFENDANT SAMSON OGOSHI:  Yes, sir.

14          THE COURT:  Do you understand the constitutional

15     rights you have in this case?

16          DEFENDANT SAMSON OGOSHI:  Yes, sir.

17          THE COURT:  Gentlemen, there are four ways that you

18     can plead to these charges.  The first way is not guilty.

19     Second, you could say nothing.  We call that standing mute.  If

20     you did that I would enter a not guilty plea for you on each of

21     the charges.  Third, you could plead guilty, and fourth, with

22     the consent of Judge Robert Jonker, who is the trial judge in

23     your case, and the consent of Mr. Reust, you could plead

24     something called no contest, which has essentially the same

25     effect as a guilty plea.

1          Do you understand your four options, Samuel?

2          DEFENDANT SAMUEL OGOSHI:  Yes, sir.

3          THE COURT:  Samson?

4          DEFENDANT SAMSON OGOSHI:  Yes, sir.

5          THE COURT:  I am going to ask your lawyers now to

6     enter pleas for you on these charges.  Mr. Tilton?

7          MR. TILTON:  Not guilty on all counts, Your Honor.

8          THE COURT:  All right.  A not guilty plea will be

9     entered on all counts.

10          MS. KELLY:  Not guilty on all counts.  Thank you.

11          THE COURT:  Yeah.  You are welcome.  Not guilty pleas

12    will be entered for Samson as well.

13          Gentleman, that concludes the arraignment.  We are

14    going to turn now to the pretrial conference.  Your lawyers

15    filed a pretrial form with me before court.  In that form each

16    of them is asking that if your case goes to trial it be a trial

17    by jury.  Each of them has agreed on your behalf to provide the

18    government any information which you are obligated by law to

19    provide.  There isn't very much of that.  And each of your

20    lawyers has asked the government to disclose whether it intends

21    to offer evidence under Federal Rule of Evidence 404(b), which

22    allows the introduction of evidence of conduct or actions other

23    than that charged in the case for a limited number of reasons

24    and under a limited number of circumstances.

25          Mr. Reust, questions for Mr. Tilton?

1          MR. REUST:  No, Your Honor.  Thank you.

2          THE COURT:  You are welcome.  Questions for Ms. Kelly?

3          MR. REUST:  Also no, Your Honor.  Thank you.

4          THE COURT:  All right.

5          Yes.  The government also filed a pretrial summary

6     statement with me.  Mr. Reust, I didn't go through and compare

7     them.  Are they identical?

8          MR. REUST:  They are not identical.  They are fairly

9     similar.

10          THE COURT:  Okay.  Well, we'll go through them

11     separately in that case, starting with Samuel.

12          Now, Samuel, Mr. Tilton is going to get copies of all

13     the actual evidence or have the chance to review it.  And after

14     he does that I'm sure he'll sit down and go through all that

15     with you carefully, but what follows will be a summary of what

16     the evidence in your case looks like.

17          The government claims that it has written records of

18     oral statements made by you, in other words, things you said.

19     Those are contained in a report summarizing an interview of you

20     by the FBI in Lagos, Nigeria, on February 8 of this year.

21     Statements -- summaries of statements made by you as a result

22     of your arrest and during your transport from Nigeria here to

23     Grand Rapids, Michigan, earlier this month.  The government

24     also claims to have written or recorded statements by you,

25     including an interview of you in Lagos on that same date,

February 8, recordings of statements you made during your

transport, images, chat logs and messages shown to you during

that -- the interview, which you recognized and initialed,

statements made by you in chats with victims of sextortion and

with co-conspirators.  Kind of a kitschy word.  I don't know.

I mean, it's extortion.  I mean, sextortion seems a -- I don't

know.  I might have chosen a different word.  But also in

signed statements of yours, in signed consents to answer

questions without a lawyer present on August 8 and February 12

of this year, and a signed consent to search WhatsApp for

evidence.

         The government has looked and not found any prior

criminal conduct by you.

         The government claims to have other evidence,

including documents obtained in response to subpoenas and

search warrants, chat logs, e-mail records and financial

records, as well as your cell phone and images and messages

shown to you during the interview, which we talked about a few

moments ago.

         There were a number of search warrants executed in the

case, federal search warrants, including for information from

Apple, several search warrants to Apple, several to Google, it

looks like at least a couple to Yahoo, and three to WhatsApp,

Facebook, AT&T and Sprint.  Telephone -- the two phones were

looking for location information.

1    The search warrants, the returns, and an inventory of

2    any evidence seized will be part of the information provided to

3    your lawyers.

4    The government expects to have written reports

5    following computer forensic examination.  Typically this would

6    be of cell phones, laptops, that sort of thing, looking for

7    evidence such as text messages, e-mails, photographs, that sort

8    of thing.  The medical examiner's report concerning the victim

9    will also -- is also part of the evidence packet in this case.

10   In response to Mr. Tilton's question about 404(b), the

11   government does intend to offer evidence that you continued to

12   engage in this extortion conduct after the time period charged

13   in the indictment for a number of reasons, which are allowable

14   under Rule 404(b).  I am sure Mr. Tilton will look that over

15   carefully, talk to you about and take whatever action is

16   appropriate.

17   The government will also introduce evidence that

18   co-conspirators hacked social media accounts and coordinated

19   payments from the victims of your conspiracy.  That evidence

20   may also be admissible for other reasons.  Again, Mr. Tilton

21   will keep an eye on that for you I am sure.

22   The government is also asking for a jury trial.

23   Estimates it'll last eight to ten days.

24   Finally, there is a plea negotiation policy.  If you

25   intend to have Mr. Tilton try to negotiate a plea bargain for

1    you, it would have to be finalized at least one month before

2    the final pretrial conference in this matter.  Now, Mr. Tilton

3    will keep a close eye on that date and all the other dates for

4    you, and I am sure he'll talk to you about whether or not it

5    makes sense to attempt a plea bargain given your specific

6    situation.

7            Mr. Tilton, questions for Mr. Reust?

8            MR. TILTON:  None at this time, Your Honor.

9            THE COURT:  All right.  All right.  Samson, let's take

10   a look at yours.  It looks like many of the same things.  A

11   report summarizing an FBI interview of you on February 8 in

12   Lagos, statements made during your arrest and transport, a

13   recorded interview on February 8 in Lagos, which the government

14   claims you made certain admissions, recordings made by you

15   during transport, statements made by you in chats with victims

16   and co-conspirators, your signed consent to answer questions

17   without a lawyer present on a couple of dates, and a signed

18   consent to search a WhatsUp -- I'm sorry, a WhatsApp account.

19           The government has looked in your past and also found

20   no evidence of prior criminal activity.

21           The government has similar and probably in many cases

22   identical other evidence, including documents obtained in

23   response to subpoenas and search warrants, chat logs, e-mail

24   records, financial records, evidence in your cell phone, images

25   and messages shown to you during your interview.

1        Are the search warrants the same, Mr. Reust, or are
2    there also some differences there?
3        MR. REUST:  Those are the same, Your Honor.
4        THE COURT:  Okay.  The same list of search warrants
5    that I read to your brother, Samuel, a moment ago, and the same
6    written reports.
7        The government also intends to offer the same type of
8    evidence against you under 404(b) that it's given notice of to
9    your brother.  Obviously, the jury trial eight to ten days, and
10   the plea negotiation policy is the same for you as it is for
11   your brother.  Ms. Kelly, questions for Mr. Reust?
12       MS. KELLY:  No, Your Honor.  Thank you.
13       THE COURT:  Mr. Reust, I am going to read the
14   government the 5(f) notice now.  Pursuant to the Due Process
15   Protections Act the Court reminds the government of its
16   obligations under the 1963 United States Supreme Court case of
17   Brady versus Maryland to disclose evidence favorable to the
18   Defendant and material to the Defendant's guilt or punishment.
19   The government is ordered to comply with Brady and its progeny.
20   The failure to do so in a timely manner may result in
21   consequences including dismissal of the indictment or
22   information, exclusion of government evidence or witnesses,
23   adverse instructions, dismissal of charges, contempt
24   proceedings, sanctions by the court or any other remedy that is
25   just under the circumstances.

1          Mr. Reust, does the government commit to honoring its

2     obligations under Brady and the act?

3          MR. REUST:  Absolutely, Your Honor.

4          THE COURT:  Thank you.  All right.  Gentlemen, that

5     concludes the pretrial conference, leaving only the question of

6     bond.

7          Mr. Reust, is the government prepared to proceed on

8     bond?

9          MR. REUST:  Yes, Your Honor.

10          THE COURT:  Mr. Tilton, I have been told that you are

11     seeking an adjournment?

12          MR. TILTON:  That's correct, Your Honor.

13          THE COURT:  And Ms. Kelly, you have joined in that

14     request?

15          MS. KELLY:  Yes, Your Honor.

16          THE COURT:  All right.  Anything else you want to say

17     about that?

18          MR. TILTON:  I can make a record if you'd like?

19          THE COURT:  If you wouldn't mind a brief record.

20          MR. TILTON:  Your Honor, 18 US v 3142(f) allows for

21     continuance of the bond hearing of up to five days by the

22     Defendant at Defense request and then beyond that for good

23     cause.  I think that there is certainly good cause here.  There

24     is a rebuttable presumption for both Defendants.  The

25     Defendants are from Nigeria.  We were appointed to represent

1    them three days ago, and there is still much investigation for

2    our offices to do.  We have been trying to reach the family in

3    Nigeria, and it's taking longer to get in contact with all the

4    family members and to be prepared for a hearing today.

5              Additionally, there are complex issues related to

6    their immigration status or their status with ICE related to

7    their extradition, and we believe it would be in the best

8    interests of our clients and for the Court's benefit if we had

9    additional time to brief some of those issues as to what might

10   happen with them if the Court did order a bond in this case.

11             So I think there is certainly good cause for at least

12   a brief adjournment here so we can complete our investigation

13   and submit briefs to the Court.

14             THE COURT:  All right.  Thank you, Mr. Tilton.

15             Mr. Reust, I have been told the government does not

16   oppose a continuance until Wednesday at 10:30?

17             MR. REUST:  Your Honor, that's ultimately correct.  I

18   do believe we could probably proceed and the Court could decide

19   the dangerousness issue, but I understand the Defense wants

20   time to investigate and respect that contacting the Defendants'

21   family may be difficult.

22             THE COURT:  All right.  Okay.  We will adjourn, then,

23   the bond hearing till Wednesday of next week, August 23rd at

24   10:30 a.m.

25             Gentlemen, that concludes our business together here

```
1          today.
2                    Mr. Reust, anything else from the United States?
3                    MR. REUST:  No, Your Honor.  Thank you.
4                    THE COURT:  Mr. Tilton, anything from you, sir?
5                    MR. TILTON:  No, Your Honor.  Thank you.
6                    THE COURT:  Ms. Kelly?
7                    MS. KELLY:  No, Your Honor.  Thank you.
8                    THE COURT:  Samuel, did you understand everything that
9          happened in Court today?
10                   DEFENDANT SAMUEL OGOSHI:  Yes, sir.
11                   THE COURT:  Any questions for me before I adjourn your
12         case?
13                   DEFENDANT SAMUEL OGOSHI:  No, sir.
14                   THE COURT:  All right.  Samson, did you understand
15         everything that happened in Court?
16                   DEFENDANT SAMSON OGOSHI:  Yes, sir.
17                   THE COURT:  Is that a yes?
18                   DEFENDANT SAMSON OGOSHI:  Yeah.  Yeah.  Yeah.
19                   THE COURT:  Any questions for me?
20                   DEFENDANT SAMSON OGOSHI:  No.  No.
21                   THE COURT:  Okay.  We will be adjourned.
22                   (Proceeding concluded, 3:36 p.m.)
23
24
25
```

C E R T I F I C A T E

    I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.


                        /s/ _____

                        Paul G. Brandell, CSR-4552, RPR, CRR

                        U.S. District Court Reporter

                        399 Federal Building

                        Grand Rapids, MI  49503